23-12-33, Pappas v. QUTOUTIAO. Good morning. Thank you, Your Honor. And may it please the Court, Richard Cipolla on behalf of Plaintiff Appellant James Pappas. So this is an appeal of a dismissal of Securities Act claims arising on the Sections 11 and Section 12. The allegations for those claims are that the issuer and underwriter defendants negligently permitted misleading statements to be contained in the offering statements because they didn't perform a reasonable investigation. That is the epitome of a strict liability Securities Act negligence claim. Nonetheless, the District Court wrongly applied the heightened pleading standard of Rule 9b because it looked at the wrong paragraphs of the complaint. It looked at paragraphs of the complaint that the plaintiff had explicitly carved out from the Securities Act claims because they applied to a separate Exchange Act Securities Fraud claim, which is not part of the Securities Act claims and not part of this appeal. Can I ask, do you have to win this argument? So no, Your Honor. We still meet the 9b pleading standard in this case. We still don't have to meet allegations like elements like scienter. We just have to prove falsity and we think we have the allegations with specificity to plead that at the time the representations and disclosures were made, they were false. But still, we think it is important that the District Court made this error and that repeatedly District Courts have held that Rule 9b does not apply to Securities Act claims when, one, it's structured in a way that keeps the claim separate and, two, when the Securities Act claims are premised on the defendants not performing a reasonable investigation. That is the standard the Court should apply here when reversing the District Court. Don't you still need to apply the same standards with respect to falsity and materiality regardless of whether it's under 9b or under 8? I think the defendants might disagree. I think courts might apply different standards on Rule 9b in terms of the specificity of the falsity needs to be applied. We would say that, again, the allegations here meet both standards and maybe you don't necessarily have to address that. But in terms of the details about what makes it false, that level of detail does not need to be the same under an 8a standard as opposed to 9b, you would say. But I think it makes sense to just turn to the sufficiency of the allegations and why the judge got it wrong either under an 8a or 9b standard. And the through line of the District Court's error here is that at every turn, the District Court, when they had competing inferences to be drawn from the allegations, gave the tie to defendants, which is not proper under Rule 12b6, under either 9b or 8a, which is why we went by the standard. There were a fair number of warnings in the disclosure documents. When you look at the warnings, what is still misleading about the statements? We have robust compliance measures to prevent illicit acts. Your claim is that that was false? Your Honor, I think the specific kind of allegation that's false is what we allege in paragraph 328. So they allege that they had content screening measures that could identify objectual content through AI and through its fancy technologies with a high degree of accuracy. And at the same time, they said we can't assure investors that all ads would be true, accurate, and in full compliance. There were clearly statements to the effect that there may be violations, things may slip through. Yes, Your Honor, and I think this Court's decision in Meyer v. Ginkgo Solar Holdings says the same thing. It wouldn't be reasonable for an investor to think you'd get 100% compliance. But when you make a representation, like in that case, it was about the efficacy of pollution controls. But at the time you make that representation, there's already materialized the fact that those controls aren't as effective, especially when you describe the specificity that they described here. Again, we have AI technologies, and we can identify this content with a high degree of accuracy. So a high degree of accuracy is what's false, in your view? Yes, we think that representation was false, because at the time the representation was made. What should it have been? Medium? I mean, I don't know exactly what the representation should have been about the accuracy of the program. I mean, these are vague terms, and oftentimes, in addition to the disclosure of warning of the specific risk that this might not be foolproof, this is also the kind of thing that we consider puffery, isn't it? It's very effective, highly effective. I think a high degree of accuracy, again, puts it more in that Meyer v. Ginkgo Solar Holdings claims about, again, because they specify exactly what makes it effective, right? The AI technology that they have behind it. It's not simply that we're best in class or we do the best we can. They say we have these The main reason the district court held that that disclosure didn't apply was because it credited the defendant's competing interpretation that the disclosure about content didn't apply to advertising content, right? This issuer has two kinds of content. It's a social media content app. It has user-generated content and advertising content. The district court adopted the defendant's interpretation that the content at issue in that disclosure only applied to user-generated content, not advertising content. But as this court said in the Textron case, the district court can't get the pick between competing inferences of allegations that it likes the most. The question is, was it reasonable for, was it plausible for a reasonable investor to think that this disclosure about content and being highly accurate in identifying objectionable content applies to all kinds of content? We think in this case we're past that. Can I ask you a question about a different alleged misrepresentation? What are the factual allegations that you say indicate that a material amount of QTT's revenue was attributable to illegal advertisements? What paragraph supports materiality of the illegal revenue? Your Honor, the main paragraphs of those are the ones that describe the drops in revenues that happened after the remediation efforts. But those talk about the drop being attributable, at least in part, to the application not being available for purchase, not being available in app stores. Don't they? Your Honor, yes, there are maybe multiple causes there, but the question again, is it plausible for one of the, for the reason to be because of the removal of the ads? And it's, again, this court, the district court made this error and they invite this court to make the same error at 45 page of their opposition brief to say that, well, plaintiffs can't come up with a competing story about why the revenue fell. We have this, you know, we say we remediated and because of the remediation the revenues fell, but that's not our allegation. Our allegation is the revenues fell because they removed a substantial number of ads and if they want to say no, it was because it would close in the app store for two or three days. That's just a competing story and the district court doesn't get to pick which story it likes more. The question is, is our story is plausible? Well, what is it that you say supports the inference that the Mingay, Fanson, and the other entity predated the IPO? What allegation supports that? On the related party transaction regarding the advertiser, I think for those, we don't have any details about when those entities existed because all we have is, you know, the first time it gets reported by them in March of 2020. We do know, and I see my time is almost up, we do know that is up, that there are other related party transactions regarding Liang that did predate the transaction and, you know, he was involved in two different investment companies of defendant Eric Tam. Thank you, Your Honor. Good morning, Your Honors. Brian Jin from Simpson-Fletcher & Barlett for defendant's affilies. Your Honors, I'm happy to explain why Rule 9b should apply here, but the reality is these claims must be dismissed under either pleading standard. The district court did not dismiss these claims because Plaintiff failed to specify who said what, where, and when. Instead, the dismissal was based on a failure to plead falsity because all the falsity allegations are conclusory, speculative, and not supported by well-pleaded factual allegations, which requires dismissal even under Rule 8. Let's just take the linchpin claim for example. So Plaintiff alleges that at the time of the IPO and the SPO, there was a substantial portion of advertisements on QTT that were illegal and QTT failed to disclose that. Well, that naked statement in itself is certainly insufficient. So what are the... Well, the complaint goes on to allege that the government stepped in because of the quantity of ads. Isn't that a plausible inference that there was a substantial number of offending ads? Well, Your Honor, the biggest problem with that allegation is that the TV program, the remedial measures, the alleged revenue drops, those events all took place long after the IPO and the SPO. It was at least 15 months after SPO. But that can't be your answer because their argument is that it's the drop as a result of the remedial measures that demonstrates the magnitude of the illegal advertisements before the remedial measures. Well, I think there are multiple answers to that question, Your Honor. So there's first the allegation itself makes clear that there were multiple reasons for the drop. And even... So there was the unavailability of the app and there were removal of not only illegal advertisements but also other advertisements that may have been deemed inappropriate. So I don't believe those allegations support an inference that there were a substantial portion of illegal advertisements even in the third quarter of 2020. But to plead a securities act... I mean, it just has to be plausible under Rule 8. It doesn't have to be more likely than not, correct? Correct. But there's a difference between possibility and plausibility. And I believe the plaintiff's allegation has not notched the claim over that line. But in any event, all of these took place in the third quarter of 2020 to plead a securities act violation. The plaintiff must show that there were materially false or misleading statements in the offering documents at a time those documents issued. That's just what they failed to do here. Judge Lyman, I believe you articulated in the Sobel case that it is not sufficient that at some point after the registration statement became effective, some subsequent event made it no longer accurate. That's exactly the case here. So these allegations are not even relevant. Another thing they allege and rely heavily on in their is the Dianguan acquisition. So according to the complaint, QTT acquired Dianguan to replace Baidu as its primary sales agent, which purportedly resulted in reduced compliance oversight. Well, even at face value, reduced oversight does not support their claim that a substantial portion of the advertisements were illegal because it doesn't say reduced to what But there is a more fundamental problem with this allegation, which is primacy on paragraph 76 of the complaint. This paragraph states that before the change, Baidu, quote, used its algorithms to ensure that the advertisements its places on applications such as QTT are compliant with regulations. It includes a single citation to page F17 of QTT's 2018 annual report. The problem is that, which is page A458 in the appendix. The problem is that there is no reference whatsoever to algorithms, regulatory compliance, or oversight on this page. This is a part of the F pages. It contains notes to the consolidated financial statements and it discusses, among other things, accounting treatment of revenues received through advertisements agents such as Baidu, a two percent commission they charged under the Dianguan acquisition, which eliminated their costs. There's nothing on this page or anywhere in the record that even suggests that Baidu ever provided a regulatory oversight to QTT. Allegations like this are just entirely baseless and unsupported. They must be rejected. In fact, perhaps the only allegation that is at least arguably relevant here is in paragraph 71 of the complaint, which point of now tries to delete from their proposed amendments. In any event, this paragraph states that in June of 2019, a local regulator found multiple instances of illegal advertisements on QTT. QTT was placing more than two billion advertisements every day. Multiple instances of illegal advertisements, that's certainly not substantial. It should be noted that... Can I ask you a question? I mean, under 9b argument, you make a point, the district court made a point of focusing on the heading of Roman 6, Defendants of Illegal Acts, and then pointed to a number of paragraphs in section 6. But as I read the complaint, the only portion of section 6 that is incorporated in the section 11, section 12 claims is Roman 6c, not the heading of Roman 6, and not actually paragraph 71 to which you point now, or a number of the other paragraphs that the district court identified. Your Honor, you are correct. But in Rombach, this court stated that the wording of 9b is not... is cut in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud. So if we look at the conduct alleged in the Securities Act section, what is alleged? It is alleged that the company misrepresented the reason behind its poor strategy of focusing on smaller cities. The company told the investors... A underwriter can't be negligent for missing the company's strategy and allowing a registration statement of prospectus to go out that misrepresents the strategy? Well, maybe I can see an example where the company inadvertently failed to... No, I'm talking about the underwriters now. The underwriter, I think this case, in this case, the underwriter is also alleged to have knowledge or should have knowledge of the fraud. So this case is different from Rombach in that instance. But back to the... back to the allegation, the substantive allegation, I think all the... all the factual allegations are either irrelevant, baseless, or consistent with the issuer's warning to investors that they cannot assure that all of the advertisements are legal and compliant. And therefore, none of them supports the plaintiff's claim of illegal advertisements disclosure. Moving on to the related party transaction claims concerning Your honors, I'm not aware of any authority, especially within this circuit, that holds that two companies are related entities simply because their executives have a separate business relationship that have nothing to do with the entities at issue. As the district court correctly held, this novel theory is unsupported and is not plausible. Is it plausible that the advertising entities were... that the related party relationship existed prior to the prospectus for the other related parties? Your honor, I believe you are mentioning the other related party transaction claim about the advertisers. So that one, I think, is similar to the main advertising claim in that they state that, oh, because there were transact... related party transactions in September of 2019, based on the short-sale report, there must have also been related party transactions in 2018 before the IPO. Well, the complaint doesn't even say that. The complaint just says... just cites the short-sale report and say there are related party transactions. Therefore, we have a security that claim. And the complaint certainly does not include any factual allegations supporting an inference that there were undisclosed related party transactions before the IPO or the SPO. On the standing issue, if I may, just very quickly. Plenty of reliance on Langen is misplaced because that case discusses Article 3 constitutional standing. This case is about statutory standing, which is really a part of the statute, a part of the elements of the claims. These are mandated by the Congress, then they cannot be eliminated by Langen, and the Supreme Court recently reaffirmed that in the Slack decision. In that case, the court found that even though that defendant, that plaintiff had standing to assert a 10b-5 claim to challenge the same disclosures, he does not have similar standing to assert Section 11 and Section 12 claims. As a result, those claims must be dismissed. Thank you, Your Honors. I want to return to this issue about the plausibility of the allegations that at the time of the IPO and SPO offerings, there was illegal advertisements on the Chitrao-Tiao system. That's why we think the Meyer versus Jinko-Solar holdings case is so accurate, so relevant, because in that case, a month after the offering documents were issued, that was when the issuer told the pollution regulator in China, oh, actually, we have shortcomings. It was the fact that a month later that disclosure happened, that there was a fair inference, it was plausible that those shortcomings existed at the time of the offering documents. Here, we have something similar. Council just pointed to Paragraph 71 and 72, for example, which showed a talking to by the regulators a few months later. We also have allegations at Paragraphs 253 to 256, which describe a lawsuit in January 2019 alleging there were illegal ads in 2018, describing other reports by the CCTV showing that, oh, there are some illicit ads on Chitrao-Tiao. So if it's enough to be getting this attention, I know they run billions of ads, but no one's going to call them in for a talking to just because out of a billion ads, there's one or two that's improper. It's going to have to be a substantial amount, at least that's a plausible inference at this stage of the pleadings. I also want to quickly return to the Mentua-related party transaction. We do allege that the entity existed before the IPO. We think that there's, again, a plausible inference there that the entity existed before the IPO, that there was related party transactions, even if they didn't disclose it for the first time until a short seller identified that traffic and forced them to disclose it. Again, they kind of lose the benefit of the doubt when they're doing it in response to a short seller report. There's no further questions. Thank you, Your Honor. Thank you, counsel. Thank you both. We'll take the case under advisory.